## TAYLOR v. JACOBS.

### No. 5449.

Court of Appeal of Louisiana. Second Circuit.

April 1, 1937.

Rehearing Denied April 30, 1937.

J. B. Crow and Barksdale, Bullock, Warren, Clark & Van Hook, all of Shreveport, for appellant.

Wise, Randolph, Rendall & Freyer, of Shreveport, for appellee.

HAMITER, Judge.

Plaintiff seeks compensation under the provisions of the Louisiana Employers' Liability Act (Act No. 20 of 1914, as amended).

For a cause of action, he alleges that while in the discharge of his duties and in defendant's employ as a street car operator, he was attacked, assaulted, wounded, and robbed by two negroes on the night of January 27, 1934, and was rendered totally and permanently disabled. The prayer of his petition is for a judgment awarding compensation at the rate of $18.25 per week for 400 weeks, with legal interest thereon, less a credit of $474.50, and for further judgment of $250 for medical and hospital expense.

In his answer, defendant admitted the alleged employment, that plaintiff was assaulted while in the performance of his duties, that certain injuries were received by him, and that compensation in the total amount of $474.50 had been paid. He denied, however, that the injuries were as serious as alleged. The answer also contains averments that plaintiff was paid his regular earned wages from July 25, 1934, the date on which he returned to work, until his discharge from service on November 6, 1934, and that if he is presently suffering from any disability of any kind or character, it is not a result of the attack on January 27, 1934, but is due to other causes and other injuries for which defendant is not responsible.

The case was tried on these issues, and there was judgment rejecting plaintiff's demands at his cost. This appeal was prosecuted.

The question presented by the appeal is: Was plaintiff totally and permanently disabled by reason of the injuries which he received while in the discharge of his duties?

At a late hour on the night of January 27, 1934, plaintiff stopped his street car at the end of the Lakeside line on Milam street in the city of Shreveport, and descended from it for the purpose of changing the trolley and permitting his making a return trip. While standing on the street and holding to the trolley pole, two negroes set upon and beat him severely, and shot him once in the lower portion of the left leg. He had been in the employ of the Shreveport Railways Company and its present receiver for more than twenty years, and was at that time sixty-one years of age. The injuries resulting from the assault necessitated his staying in a Shreveport sanitarium for a number of days. All medical and hospital expenses were defrayed by defendant, and from the date of the assault until July 25, 1934, plaintiff was paid compensation at the proper statutory rate. He also received from the Local Union of Railway Men, of which he was a member, a sick benefit of fifteen weeks.

On this last-mentioned date he resumed his regular work as a street car operator, and continued it for about three months. Some time during the morning of October 26, 1934, he left his home and went to the residence of his daughter, a distance of several blocks. While there, the daughter telephoned defendant's office, at plaintiff's request, and informed his superiors that he was sick and was laying off. About 10:30 that night, when off duty, he was observed walking near the State Fair Grounds, which is located several miles from his home, in a badly injured and bruised condition. Several persons assisted him into an automobile and he was transported to his home and then to a sanitarium. According to the testimony of one who rendered assistance on that occasion, he was suffering with cuts and bruises about the head, face, and hands, and made the statement at the time that some one jumped on him and beat him up. Plaintiff testified that he did not remember journeying to that location, or the cause of his injuries.

When plaintiff reported for duty on November 6, 1934, he was notified of his discharge because of an alleged infraction of one of defendant's rules.

The evidence in the record preponderates in favor of the fact that plaintiff's disability resulting from the original assault had entirely ceased when he resumed work on July 25, 1934. According to Dr. Le Doux, the only medical expert to testify in the case and who treated plaintiff and appeared as his witness, all of the injuries had healed and all objective symptoms had cleared up by the last-mentioned date, and he recommended plaintiff's return to work. Appellant testified, and his testimony is corroborated to some extent by certain other witnesses, that continuously since the first accident he has suffered severe and prolonged headaches, has been unable to properly sleep and rest, and has been very

nervous and mentally hazy; that his general health has been much impaired; and that he has lost considerable weight. This evidence, however, cannot prevail over his recorded admission that he told defendant of his readiness to return to work, and over the positive proof that he worked regularly and efficiently for the three months' period prior to the time he was injured at or near the Fair Grounds. The testimony of Mr. W. W. Golden and Mr. W. E. Lawson, fellow street car operators, and of other employees of defendant, is to the effect that they noticed no difference between his work during such period and that performed prior to his receiving the initial injuries.

Counsel for plaintiff contend that the underlying cause for his discharge on November 6, 1934, was his inability and incapacity to render efficient service to his employer on account of the injuries received while performing his duties. This contention does not appear to be well founded. His work for the above-mentioned three months' period was entirely satisfactory, and no apparent disability existed to suggest to defendant that his efficient services would not continue. Furthermore, all of defendant's employees belonged to a local union which is affiliated with the American Federation Union of Railway Men. This local has an executive board, one of the duties of which is to represent the employees in their disputes with and complaints against defendant. On this board are Messrs. H. W. Robertson, W. E. Lawson, and J. D. Elliot, all of whom are street car operators. These three members appeared in the case as defense witnesses, on being summoned, and testified that plaintiff made no complaint to the executive board regarding defendant's treatment of him during the period of his disability, or of his being unjustly and unfairly prevented from returning to work; and that if he had complained, the necessary and proper action would have been taken in his behalf.

In all events, only an issue of fact is herein involved. The trial judge, who saw and heard the witnesses, resolved that issue in defendant's favor. A thorough study of the record has been made by us, and we cannot say that his finding was manifestly erroneous.

Accordingly, the judgment of the trial court is affirmed.